UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON, KENTUCKY

| | |
|---|---|
| **JANICE MILLER**<br>**2265 Thomasville Court, Apt. 1643**<br>**Cincinnati, Ohio 45238** | Case No.<br><br>Judge: |
| **Plaintiff,** | Magistrate: |
| v. | **COMPLAINT WITH JURY DEMAND** |
| **HOUSING AUTHORITY OF COVINGTON**<br>**2300 Madison Avenue**<br>**Covington, Kentucky 41014** | |
| **Defendant.** | |

Now comes the Plaintiff, Janice Miller ("Plaintiff" or "Miller"), by and through counsel, for her Complaint against the above-named Defendant as follows:

## I. THE PARTIES

1. Plaintiff is an individual residing in Cincinnati, Ohio, Hamilton County and is a former employee of the Defendant, Housing Authority of Covington ("Defendant")

2. Defendant is a public housing agency located in Covington, Kentucky, and provides public housing in northern Kentucky areas and administers the Housing Choice Voucher (Section 8) for the City of Covington, which is funded by the U.S. Department of Housing and Urban Development (HUD).

3. At all relevant times herein, the Defendant employed the Plaintiff to work at its facility in Covington, Kentucky location as the Controller.

4. At all relevant times herein, the Defendant was the Plaintiff's employer and is an employer as defined by Title VII of the Civil Rights Act of 1964, as codified in 42 U.S.C.

2000e(b), et seq.; the Kentucky Civil Rights Act as found in Kentucky Revised Statutes Chapter 344, specifically KRS 344.030; and KRS 337.010(d).

5. At all relevant times herein, the Plaintiff was an employee of the Defendant, and is an employee as defined in Title VII of the Civil Rights Act of 1964, as codified in 42 U.S.C. 2000e(b), et seq.; the Kentucky Civil Rights Act as found in Kentucky Revised Statutes Chapter 344, specifically KRS 344.030; and KRS 337.010(e).

## II. JURISDICTION AND VENUE

6. Plaintiff fully incorporates the allegations in the preceding paragraphs of this Complaint as if fully rewritten herein.

7. This Court has federal jurisdiction over this case pursuant to 28 U.S.C. §1331 because Plaintiff's Complaint raises a cause of action under Title VII of the Civil Rights Act of 1964, as amended, as codified in 42 U.S.C. 2000e(b), et seq.  This Court has supplemental jurisdiction over the Plaintiff's state law causes of action pursuant to 28 U.S.C. § 621, *et seq*. because these claims arise out of the same facts and circumstances involved in the federal causes of action herein and involve the same case or controversy.

8. Venue is proper within the Eastern District of Kentucky pursuant to 28 U.S.C. § 1391 because all of the conduct giving rise to the Plaintiff's causes of action occurred in Covington, Kentucky.

9. Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission on May 29, 2019. A copy of which is attached hereto as Exhibit 1. The EEOC issued a Dismissal and Notice of Rights, which was mailed to the Plaintiff on June 13, 2019. A copy of which is attached hereto as Exhibit 2.

### III. FACTS

10. Plaintiff fully incorporates the allegations in the preceding paragraphs of this Complaint as if fully rewritten herein.

11. Plaintiff is an African American female.

12. Plaintiff worked for the Defendant as the Controller until the Defendant terminated her employment on February 14, 2019.

13. On September 4, 2018, the Plaintiff hired Linda Catron (white female) to work as the Senior Accountant.

14. Soon after, Linda Catron begin displaying negative behaviors towards the Plaintiff and another employee Marie Brown (African American female).

15. Linda Catron ignored Plaintiff's repeated requests to stop the negative behavior and continued the disrespectful behavior toward both Plaintiff and Marie Brown and eventually became insubordinate to Plaintiff's directions and disruptive to the entire department.

16. Plaintiff reported her behavior to the Human Resources Manager, Linda Garrett (white female), and the Interim Executive Director, Steve Arlinghaus (white male), and they did nothing.

17. On November 6, 2018, a meeting was held with HR, Steve Arlinghaus, and the Plaintiff. During this meeting, Steve stated that he told Linda Catron that Plaintiff was the Controller for the Housing Authority of Covington, Plaintiff was the head of the department, and he instructed Linda to discontinue her abrasive and insubordinate behavior to both Marie Brown and the Plaintiff. But Steve did not discipline Linda Catron at all or document this alleged discussion.

18. On November 12, 2018, Plaintiff asked Linda Catron to provide a progress report on her financial audit assignments. Bobbie Hargett (white male) was present.

19. Linda specifically stated that she did not have to report her progress to the Plaintiff and refused to provide an updated financial audit progress report. She was loud, abrasive and disrespectful to the point that it made Bobbie Hargett uncomfortable and he left the room.

20. Plaintiff then requested Linda Garrett from HR to come into Linda Catron's office to address her insubordination and aggressive behavior. Linda Garett came to the office and Linda Catron continued her disrespectful and insubordinate behavior towards the Plaintiff.

21. Linda Garret and the Plaintiff asked her to lower her voice repeatedly and she refused. Linda Garett and the Plaintiff left the office and Linda Garett told Linda Catron that she was extremely disrespectful and insubordinate to the Plaintiff and that her behavior was not acceptable.

22.  Plaintiff then submitted a letter to both Linda Garrett and Steve Arlinghaus asking to take disciplinary action against Linda Catron for this behavior.

23. On 11/14/2019, they held a meeting with Linda Catron, and she refused to accept the disciplinary letter from the Plaintiff.

24.  She said she has no respect for the Plaintiff and if Steve Arlinghaus and Linda Garrett did not remove the disciplinary letter she would resign immediately; and to the Plaintiff's surprise, Steve asked her to stay and refused to issue the disciplinary action.

25.   Plaintiff later asked for a meeting with Steve to discuss the disciplinary letter and his refusal to discipline Linda Catron for her insubordination and Steve Arlinghaus refused to discuss this matter with the Plaintiff. His refusal to issue the disciplinary letter and to resolve the matter was a violation of the employee handbook.

26. Linda Catron never received any discipline for her insubordination and disrespect, and the Defendant ignored Employee Problem Solving Procedures listed in the Employee Handbook.

27. On December 3, 2018, Linda Catron asked for a pay raise now that her 90-day probationary period was over. Plaintiff requested that Steve Arlinghaus postpone the raise for 30 days, because of Linda Catron's ongoing insubordinate behavior and the hostile environment she was causing within the finance department.

28. Steve gave her this raise anyway, despite company policy and despite the numerous complaints he received from staff department employees about her behavior towards the Plaintiff, Marie Brown and two other employees (Bobbie Haggert and Diana Strauss). These complaints were reported to HR and Steve in November 2018, and Steve did nothing.

29. On December 10, 2018, Marie Brown submitted a written complaint about Linda Catron's behavior, but again, nothing was done about it.

30. Plaintiff asked Steve and Linda Garett (HR) numerous times to intervene and provide guidance and assistance with this issue.

31. On January 3, 2019, Plaintiff received an email from Linda Garret (HR) to schedule a meeting to discuss Marie Brown's letter of concern dated 12/10/2018. Linda Garret said that she met with Linda Catron separately regarding Marie Brown's letter. Plaintiff asked why Marie Brown and the Plaintiff were excluded from this meeting and Linda stated that Steve Arlinghaus was going to handle the matter. Steve never addressed Marie Brown's concerns, instead, he said this matter was no longer to be discussed.

32. Steve Arlinghaus violated the company's Employee Problem-Solving policy found in the Employee Handbook, (p. 32) and HR failed to provide a summary letter of resolution.

33. During the week of January 7, 2018, Plaintiff raised concerns with HR and Steve Arlinghaus that employees were being treated differently and not in compliance with the employee handbook, and that nothing was being done to resolve employee complaints about Linda Catron and the hostile work environment she created in the finance department, but Steve and Linda Garrett ignored Plaintiff's concerns.

34. During the week of January 14, 2019, Linda Catron sent an email complaining about the hours she worked and on January 10, 2019, Linda was 1.25 hours late. Linda Catron complained to both Linda Garrett and Steve Arlinghaus that Plaintiff was deleting her hours from her Novatime exempt employee timesheet.

35. The Novatime Management System automatically clocks exempt employees out of the system at 4:30 P.M. each workday. So exempt employees are not supposed to clock out at all, per policy.

36. If an exempt employee manually clocks out after 4:30 PM, Novatime automatically creates a duplication and overlap of hours worked until 4:30 p.m. the next day, even though the employee never worked those hours, and those additional hours must be corrected in order for Plaintiff to submit payroll in the system.

37. Steve and Linda Garret met with Plaintiff and falsely accused Plaintiff of violating federal employment laws by deleting Linda Catron's additional non-work hours that she did not work.

38. But Plaintiff was actually removing non-work hours due to Linda Catron clocking out after 4:30 PM in violation of the timekeeping procedures outlined in the employee handbook (p.24).

39. The payroll company confirmed that Plaintiff was correct, and it was determined that Plaintiff did nothing wrong and Plaintiff was not violating any federal laws. Linda Catron violated the exempt employee time clock policy yet Steve Arlinghaus and Linda Garrett failed to discipline her for these violations.

40. On January 24, 2019, Linda Catron filed an unfounded complaint against Marie Brown and claimed to have an undisclosed witness to the alleged incident.

41. Marie Brown vehemently denied this incident and submitted the name of a witness who was there who could corroborate her version of events. Steve chose to discipline Marie Brown and issued a verbal warning without ever talking with her witness or consulting with Plaintiff as her immediate supervisor.

42. When Plaintiff asked both Steve Arlinghaus and Linda Garret why Linda Catron's complaint against Marie Brown was managed differently than Marie Brown's prior complaints

8

about Linda Catron, Steve Arlinghaus got angry and said "I told you, you are no longer to discuss that matter, it is a closed matter!"

43. On January 18, 2019, Plaintiff had a death in Plaintiff's immediate family and took approved Bereavement Leave on January 18th, 29th and 30th. Payroll was due on Wednesday, January 30th.

44. When Plaintiff went to access the Novatime system to complete payroll on January 30, 2019, Plaintiff learned that Linda Garrett removed Plaintiff's access password in Novatime, which prevented Plaintiff from being able to access the system to finalize payroll and upload the file into Paycor.

45. This was confirmed by the Novatime Management System technician and service ticket provided. Plaintiff then signed into Paycor to see if someone had uploaded the payroll file into Paycor already and discovered that the payroll file from Novatime was uploaded, but Linda Catron was given access to this file in Paycor, which prevented Plaintiff from accessing the payroll files in Paycor as well.

46. Plaintiff contacted the Housing Authority to speak with Linda Garrett by phone to reset Plaintiff's password, but the Defendant never answered the Plaintiff's phone calls.

47. Plaintiff made three phone calls to try to regain Plaintiff's access to Novatime to finalize payroll and upload the file to Paycor, but the Defendant never returned Plaintiff's calls.

48. On January 30, 2019, Steve Arlinghaus provided Plaintiff with a Letter of Disciplinary Action and placed Plaintiff on a 3-day suspension for not meeting the payroll deadline. The payroll was submitted timely, on January 30th, by someone else, and all employees were paid timely, which was confirmed by Paycor and the payroll reports.

49. On Wednesday February 13, 2019, Plaintiff sent the Plaintiff's pre-payroll report to Linda Garret for review and approval so that payroll could be finalized and submitted to Paycor before 12:00 noon. Plaintiff then went to Linda Garret's office and reviewed the pre-payroll reports. After reviewing the pre-payroll report with Linda Garrett, Plaintiff specifically asked Linda Garrett if there were any other discrepancies that needed to be resolved before submitting final payroll and Linda Garrett responded "no."

50. After Plaintiff submitted payroll, Linda Garret stated in an email that there were discrepancies that needed to be resolved before the next pay period. Plaintiff returned to Linda Garret's office and asked her what discrepancies she was referring to, and why she did not disclose these discrepancies when previously asked. Linda Garrett refused to identify the alleged discrepancies, and then stated that they would be discussed on Monday, February 18, 2019.

51. On Thursday February 14, 2019, Plaintiff was called into a meeting with Linda Garett and Chris Bradburn (Deputy Director). Chris Bradburn stated that Plaintiff was

10

terminated because of payroll on January 29, 2019 and for alleged Year 2018 W-2 discrepancies.

52. Meanwhile, it was determined that there were no W-2 discrepancies, and that the payroll Plaintiff submitted on Wednesday, February 13, 2019 was accurate and correct. Paycor Company provide their research payroll submission reports for the Year 2018, stating that all payroll submissions and W2's for Year 2018 were timely and accurate.

53. Steve Arlinghaus and Linda Garret treated white employees better than Plaintiff, applied different investigation and disciplinary standards to African American employees, and wrongfully terminated Plaintiff's employment in retaliation for Plaintiff's complaints about these matters. Plaintiff believe they discriminated against the Plaintiff based on her race and gender and in retaliation for Plaintiff's discrimination complaints in violation of Title VII of the Civil Rights Act of 1964 as amended, and the Kentucky Civil Rights Act, as amended

54. As a direct and proximate cause of the Defendant's actions, the Plaintiff has suffered damages for which he is entitled to judgment as a matter of law.

## COUNT I
## (GENDER DISCRIMINATION - TITLE VII)

55. Plaintiff fully incorporates the allegations in the preceding paragraphs of this Complaint as if fully rewritten herein.

56. Plaintiff is an African American female, and a member of a protected class.

57. Plaintiff was fully qualified for her position at all relevant times herein.

58. The Defendant fired the Plaintiff and subjected her to a hostile work environment during her employment because she is an African American female.

59. The Defendant's termination of the Plaintiff permitted the hiring and/or retention of male employees.

60. Plaintiff was treated differently than other similarly situated male employees who are not members of her protective class with respect the terms and conditions of her employment, including but not limited to, job performance standards and expectations, and discipline.

61. The Defendant's conduct was intentional, willful, wanton and malicious.

62. As a direct and proximate cause of the Defendant's actions, Plaintiff has suffered harm, including but not limited to front pay, back pay, emotional harm, compensatory damages, and attorney's fees and, is entitled to judgment as a matter of law.

63. Thus, Plaintiff seeks compensatory and punitive damages allowed by law.

## COUNT II
### (GENDER DISCRIMINATION – KRS CHAPTER 344, 344.040(1)(A), ET SEQ.)

64. Plaintiff fully incorporates the allegations in the preceding paragraphs of this Complaint as if fully rewritten herein.

65. Plaintiff is an African American female, and a member of a protected class.

66. Plaintiff was fully qualified for her position at all relevant times herein.

67. The Defendant fired the Plaintiff and subjected her to a hostile work environment during her employment because she is an African American female.

68. The Defendant's termination of the Plaintiff permitted the hiring and/or retention of male employees.

69. Plaintiff was treated differently than other similarly situated male employees who are not members of her protective class with respect the terms and conditions of her employment, including but not limited to, job performance standards and expectations, and discipline.

70. The Defendant's conduct was intentional, willful, wanton and malicious.

71. As a direct and proximate cause of the Defendant's actions, Plaintiff has suffered harm, including but not limited to front pay, back pay, emotional harm, compensatory damages, and attorney's fees and, is entitled to judgment as a matter of law.

72. Thus, Plaintiff seeks compensatory and punitive damages allowed by law.

## COUNT III

### (RACE DISCRIMINATION-TITLE VII)

73. Plaintiff fully incorporates the allegations in the preceding paragraphs of this Complaint as if fully rewritten herein.

74. Plaintiff is an African American female, and a member of a protected class.

75. Plaintiff was fully qualified for her position at all relevant times herein.

76. The Defendant fired the Plaintiff and subjected her to a hostile work environment during her employment because she is an African American.

77. Plaintiff's termination permitted the hiring and/or retention of white employees.

78. Plaintiff was treated differently than other similarly situated white employees who are not members of her protective class with respect the terms and conditions of her employment, including but not limited to, job performance standards and expectations, and discipline.

79. The Defendant's conduct was intentional, willful, wanton and malicious.

80. As a direct and proximate cause of the Defendant's actions, Plaintiff has suffered harm, including but not limited to front pay, back pay, emotional harm, compensatory damages, and attorney's fees and, is entitled to judgment as a matter of law.

81. Thus, Plaintiff seeks compensatory and punitive damages allowed by law.

## COUNT IV
### (RACE DISCRIMINATION – KRS CHAPTER 344, 344.040(1)(A), ET SEQ.)

82. Plaintiff fully incorporates the allegations in the preceding paragraphs of her Complaint as if fully rewritten herein.

83. Plaintiff is an African American female, and a member of a protected class.

84. Plaintiff was fully qualified for her position at all relevant times herein.

85. The Defendant fired the Plaintiff and subjected her to a hostile work environment during her employment because she is an African American.

86. Plaintiff's termination permitted the hiring and/or retention of white employees.

87. Plaintiff was treated differently than other similarly situated white employees who are not members of her protective class with respect the terms and conditions of her employment, including but not limited to, job performance standards and expectations, and discipline.

88. The Defendant's conduct was intentional, willful, wanton and malicious.

89. As a direct and proximate cause of the Defendant's actions, Plaintiff has suffered harm, including but not limited to front pay, back pay, emotional harm, compensatory damages, and attorney's fees and, and is entitled to judgment as a matter of law.

90. Thus, Plaintiff seeks compensatory and punitive damages allowed by law.

## COUNT V
## (RETALIATION – TITLE VII)

91. Steve Arlinghaus and Linda Garret treated white employees better than Plaintiff, applied different investigation and disciplinary standards to African American employees, and wrongfully terminated Plaintiff's employment in retaliation for Plaintiff's complaints about these matters.

92. Plaintiff believe they discriminated against the Plaintiff based on her race and gender and in retaliation for Plaintiff's discrimination complaints in violation of Title VII of the Civil Rights Act of 1964 as amended, and the Kentucky Civil Rights Act, as amended

93. As a direct and proximate cause of the Defendant's actions, Plaintiff has suffered harm, including but not limited to front pay, back pay, emotional harm, compensatory damages, and attorney's fees and, and is entitled to judgment as a matter of law.

## COUNT VI
### (RETALIATION – KRS CHAPTER 344, 344.040(1)(A), ET SEQ.)

94. Steve Arlinghaus and Linda Garret treated white employees better than Plaintiff, applied different investigation and disciplinary standards to African American employees, and wrongfully terminated Plaintiff's employment in retaliation for Plaintiff's complaints about these matters.

95. Plaintiff believe they discriminated against the Plaintiff based on her race and gender and in retaliation for Plaintiff's discrimination complaints in violation of Title VII of the Civil Rights Act of 1964 as amended, and the Kentucky Civil Rights Act, as amended

96. As a direct and proximate cause of the Defendant's actions, Plaintiff has suffered harm, including but not limited to front pay, back pay, emotional harm, compensatory damages, and attorney's fees and, and is entitled to judgment as a matter of law.

## COUNT VIII

### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

97. Plaintiff fully incorporates the allegations in the preceding paragraphs of this Complaint as if fully rewritten herein.

98. The Defendant's conduct was intentional, willful, wanton, malicious, reckless, and outrageous.

99. As a direct and proximate cause of the Defendant's actions, Plaintiff has suffered emotional harm, and is entitled to judgment in her favor as a matter of law.

100. Thus, Plaintiff seeks compensatory and punitive damages allowed by law.

## COUNT IX

### (PUNITIVE DAMAGES)

101. Plaintiff fully incorporates the allegations in the preceding paragraphs of this Complaint as if fully rewritten herein.

102. The Defendant acted intentionally, willfully, wantonly, recklessly, egregiously and maliciously when taking the actions described herein.

103. The Defendant acted with malice and reckless indifference to the Plaintiff's state and federally protected rights. Thus, Plaintiff is entitled to punitive damages as a matter of law.

WHEREFORE, the Plaintiff respectfully requests the Court to do the following:

Case: 2:19-cv-00125-DLB-CJS   Doc #: 1   Filed: 09/12/19   Page: 18 of 19 - Page ID#: 18

1) JUDGMENT in favor of the Plaintiff on all Counts in the Complaint;

2) AWARD Plaintiff full compensatory damages allowed under the applicable state and federal laws (including, but not limited to all lost pay and benefits, back pay, front pay, emotional distress damages, and attorney's fees);

3) AWARD Plaintiff PUNITIVE DAMAGES; and

4) AWARD Plaintiff prejudgment and post judgment interest, and all costs associated with the pursuit of this action, including, but not limited to, court costs, filing fees, depositions expenses, witness fees, reasonable attorneys' fees and any other legal and equitable relief that this Court deems just and equitable.

/s/Donyetta D. Bailey
Donyetta D. Bailey ((Ohio)0072433)
Bailey Law Office, LLC
1600 Scripps Center
312 Walnut Street
Cincinnati, Ohio 45202
Phone: (513) 263-6800
Facsimile: (513) 263-6801
dbailey@baileylawofficellc.com

*Counsel for Plaintiff, Janice Miller*

## **JURY DEMAND**

Plaintiff hereby requests a trial by jury on all the issues raised in her Complaint.

                                            /s/Donyetta D. Bailey
                                            Donyetta D. Bailey ((Ohio)0072433)

4830-0487-2101, v. 1